# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

PRANAV SINGH, HARPREET KAUR
and ISHNOOR KAUR,

Plaintiffs,

vs.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, et al.,

Defendants.

No.  C22-3035-LTS-MAR

**MEMORANDUM OPINION AND
ORDER ON DEFENDANTS'
MOTION TO DISMISS**

## I.      INTRODUCTION

This case is before me on a motion (Doc. 20) to dismiss by defendants United States Department of Homeland Security (DHS), Alejandro N. Mayorkas, in his official capacity as United States Secretary of Homeland Security, United States Citizenship and Immigration Services (USCIS), Ur M. Jaddou, in her official capacity as Director of the USCIS and Terri Robinson in her official capacity as Director of USCIS National Benefits Center.  Plaintiffs Pranav Singh, Harpreet Kaur and Ishnoor Kaur have filed a resistance (Doc. 29) and defendants have filed a reply (Doc. 32).  Oral argument is not necessary. *See* Local Rule 7(c).

## II.      BACKGROUND

This dispute concerns the adjudication of plaintiffs' I-485 applications (also referred to as green card applications).  Doc. 1 at ¶ 3.  Plaintiffs are nationals of India. In August 2014, Singh filed a Form I-140 Petition for Alien Worker with his wife and daughter, applying under the EB-2 category as a professional with an advanced degree or exceptional ability.  On January 7, 2015, USCIS approved the petition.  The petition's priority date is December 15, 2013.  In April 2022, plaintiffs were notified that their

green card applications were ready to file. They were also informed at this time that after September 30, 2022 (the end of fiscal year 2022 (FY22), their visas would retrogress. On May 9, 2022, plaintiffs submitted their I-485 applications so they could adjust status to permanent residents as soon as their priority date became current. On June 1, 2022, their priority date became current.

Plaintiffs' applications remained pending at the time they filed their lawsuit on September 16, 2022. They allege the following claims:

- Count I – Unreasonable delay pursuant to 5 U.S.C. § 706(1).
- Count II – Arbitrary and capricious actions in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A)
- Count III – Writ of Mandamus Act, 28 U.S.C. § 1361
- Count IV – Agency action unlawfully withheld in violation of the APA, 5 U.S.C. § 555(B) and 5 U.S.C. § 706(1)

Doc. 1. The complaint requested an order compelling defendants to adjudicate their permanent residency applications by September 30, 2022 (the end of Fiscal Year 2022, or FY22), or to order that USCIS "reserve" or "hold" extra EB visa numbers for plaintiffs. Doc. 1. Despite filing their complaint just two weeks before the end of FY22, plaintiffs did not file a motion for injunctive relief or otherwise seek expedited consideration of their claims.

### III.    APPLICABLE STANDARDS

The federal courts are courts of limited jurisdiction that "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Marine Equip. Management Co. v. United States*, 4 F.3d 643, 646 (8th Cir. 1993). The Federal Rules of Civil Procedure authorize a motion to dismiss a complaint due to a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proving subject matter jurisdiction is on the plaintiff. *V S Ltd. Partnership v.*

*Department of Housing and Urban Development*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citing *Nucor Corp. v. Nebraska Pub. Power Dist.*, 891 F.2d 1343, 1346 (8th Cir. 1989)). Moreover, a federal court has a special obligation to consider sua sponte whether it has subject matter jurisdiction in every case. *Hart v. United States*, 630 F.3d 1085, 1089 (8th Cir. 2011). If a plaintiff lacks standing to pursue a claim, then the court has no subject matter jurisdiction. *Faibisch v. Univ. of Minnesota*, 304 F.3d 797, 801 (8th Cir. 2002). "Therefore, a standing argument implicates Rule 12(b)(1)." *Id.* When determining standing, the emphasis is on whether the plaintiff "possesses a legally cognizable interest, or 'personal stake,' in the outcome of the action." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (quoting *Camreta v. Greene*, 563 U.S. 692, 701 (2011)). Generally, a plaintiff must assert his or her own legal rights and cannot assert the legal rights of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Where a party limits its subject matter jurisdiction attack to the face of the complaint, the attack is a "facial challenge." *Jones*, 727 F.3d at 846 (citing *BP Chems. Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 680 (8th Cir. 2002)). When presented with a facial challenge, "'the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" *Id.* (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). Those protections include treating the complainant's factual allegations as true and dismissing the action only if it appears beyond a doubt that the complainant can prove no set of facts in support of its claim that would entitle it to relief. *Osborn*, 918 F.2d at 729 & n.6.

By contrast, when a party makes a factual challenge to the district court's jurisdiction pursuant to Rule 12(b)(1), "'no presumptive truthfulness attaches to the [complainant's] allegations, and the existence of disputed material facts will not preclude [the court] from evaluating . . . the merits of the jurisdictional claims.'" *Iowa League of Cities v. EPA*, 711 F.3d 844, 861 (8th Cir. 2013) (quoting *Osborn*, 918 F.2d at 729–30 & n. 6). Where the challenge is factual, "the district court is entitled to decide disputed

3

issues of fact with respect to subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). "[T]he court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the *issue to determine whether in fact subject matter jurisdiction exists*.'" *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (emphasis added) (citation omitted). The court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004). Here, the attack is factual, as the defendants rely on evidence outside of the pleadings.

## IV. ANALYSIS

Defendants argue plaintiffs' complaint should be dismissed for lack of standing, mootness or failure to state a claim upon which relief may be granted. I will first analyze the standing and mootness issues.

The doctrine of standing ensures that courts hear only "those disputes which are appropriately resolved through the judicial process." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). As the Supreme Court has explained:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
>
> The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.

4

*Id.* at 560–61 (citations omitted); *see also City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007). The requirement of standing "ensures that [judges] act *as judges*, and do not engage in policymaking properly left to elected representatives." *Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013). Defendants primarily attack plaintiffs' standing based on redressability, noting that where a defendant has no lawful power or authority to prove the remedy sought by a plaintiff, a plaintiff cannot establish redressability. *See Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015).

Standing is "[a] close cousin of mootness." *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 601 n.13 (8th Cir. 2022) (quoting *Noem v. Haaland*, 41 F.4th 1013, 1017 (8th Cir. 2022)). "[T]he difference between standing and mootness is merely one of 'time frame: the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'") *Id.* (quoting *Sisney v. Kaemingk*, 15 F.4th 1181, 1194 (8th Cir. 2021)). "When, during the course of litigation, the issues presented in a case 'lose their life because of the passage of time or a change in circumstances . . . and a federal court can no longer grant effective relief,' the case is considered moot." *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000) (quoting *Beck v. Mo. State High Sch. Activities Ass'n*, 18 F.3d 604, 605 (8th Cir. 1994)). If an issue is moot, the court has "no discretion and must dismiss the action for lack of jurisdiction. *Ali v. Cangemi*, 419 F.3d 722, 724 (8th Cir. 2005) (citing *Powell v. McCormack*, 395 U.S. 486, 496 n.7 (1969)).

Defendants state that under 8 C.F.R. § 245.2(a)(5)(ii), USCIS may not approve an I-485 application until the Department of State (DOS) allocates a visa number. They have provided the declaration (Doc. 20-2) of Andrew Parker, the Branch Chief of the Residence and Admissibility Branch within the Office of Policy & Strategy of USCIS. Parker explains the visa allocation process generally, noting that the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1101-1537, governs how foreign nationals obtain visas to enter and permanently reside in the United States. Doc. 20-2 at ¶ 4. Section

1151 establishes a maximum number of noncitizens who "may be issued immigrant visas or who may otherwise acquire the status" of a lawful permanent resident within a fiscal year for the visa categories. For FY22, the EB annual limit was 281,507.[1] Parker explains that on September 6, 2022, DOS informed USCIS that it would not make further authorization for EB-1 and EB-2 visas because the agencies had reached the annual limit for FY22 in those categories.

This led plaintiffs' applications to retrogress at the end of FY22 and start of FY23 on October 1, 2022. "Visa retrogression occurs when more people apply for a visa in a particular category or country than there are visas available for that month." Doc. 1-8 at 2. "Retrogression typically occurs toward the end of the fiscal year as visa issuance approaches the annual category, or per-country limitations." *Id*. In the October 2022 Visa Bulletin, the cut-off date for EB-2 immigrant visas chargeable to India retrogressed to April 1, 2012, as compared to December 1, 2014, in the September 2022 Visa Bulletin. *See* Docs. 20-3 at 5, 20-4 at 5. It retrogressed further with the December 2022 Visa Bulletin, listing the cut-off date for EB-2 immigrant visas chargeable to India as October 8, 2011. *See* Doc. 20-5 at 5. As such, there are no visa numbers currently available for plaintiffs' priority date of December 1, 2013. *See* Doc. 20-2 at ¶ 15.[2]

Defendants argue that because USCIS may not approve I-485 applications without visa numbers, plaintiffs' injury cannot be redressed and is moot. *See Patel v. Jaddou*,

---

[1] Pursuant to 8 U.S.C. § 1151(d), this number is comprised of 140,000 plus 141,507, which is the difference between the available family-sponsored visa numbers and number of visas issued in FY21. *See* 8 U.S.C. § 1151(d)(1)(C) (noting the worldwide level of EB immigrants for a fiscal year is 140,000 plus "the difference (if any) between the maximum number of visas which may be issued under section [1153(a)] (relating to family-sponsored immigrants) during the previous fiscal year and the number of visas issued under that section during that year.").

[2] Parker explains that the median processing time for adjustment of status application in the EB-2 category in Q4 of FY22 was 14 months. At the time plaintiffs' complaint was filed, the plaintiffs' applications had been pending for just over 4 months. At the end of FY22, USCIS estimates it had 41,405 pending EB-2 adjustment of status applications filed by noncitizens chargeable to India. Doc. 20-2 at ¶ 15.

No.1:22-CV-11374-IT, 2022 WL 4540979, at *4 (D. Mass. Sept. 28, 2022) (holding that plaintiffs' request for adjudication of I-485 applications in FY22 became moot after the DOS announcement on September 6, 2022, because no additional visas remained for issuance in FY22). They also argue that plaintiffs' request to "hold" visa numbers to allow adjudication of their applications in FY23 is moot as of the end of FY22. *See Zixiang Li v. Kerry*, 710 F.3d 995, 1002 (9th Cir. 2013) ("There is no statute or regulation authorizing DOS to take a visa number from one year and allocate it to another year . . . . [T]he employment-based visa numbers available in a particular fiscal year expire at the end of the year, rendering moot any claim for a visa number from a prior year."). To the extent plaintiffs are asking the court to reserve or hold FY23 visas for them, defendants argue this request is not apparent from the face of the complaint[3] and in any event, is moot.

As to the first point regarding adjudication of their applications in FY22, plaintiffs rely on USCIS's policy manual, which provides that when a preference category is fully subscribed, the applicable regulations "prevent USCIS from rejecting applications within that particular month, regardless of the actual availability of visa numbers." *See* https://www.uscis.gov/policy-manual/volume-7-part-a-chapter-6#footnote-34) (citing 8 C.F.R. § 245.1(g)(1)). Also, despite DOS' report on September 6, 2022, that it would not make further authorizations for EB-2 visas, plaintiffs argue that there were still 17,997 employment-based visas available (as of August 31, 2022) according to a report on September 8, 2022, and that regulations require that unused green cards for each of the preference categories roll down for use in the next preference category. Plaintiffs suggest the annual limit for employment-based visas was not reached or that every

---

[3] *See* Doc. 1 at ¶ 9 ("Plaintiffs, therefore, bring this action to request the Court to order USCIS to immediately adjudicate their applications, and/or that the Court order USCIS to 'reserve' two additional visa numbers for the following fiscal year if their applications are delayed.") and Prayer for Relief ¶ 4 ("Order any other relief that may be equitably necessary, such as ordering USCIS to 'hold' extra employment-based visa numbers beyond Fiscal Year 2022, to allow adjudication of Plaintiffs' applications in Fiscal Year 2023.").

category had been filled. In other words, even if the per-country cap had been reached for employment-based immigrants in the EB-2 category, this cap could still be surpassed as long as green cards were available within the 140,000 annual worldwide limit for employment-based immigrants. They note defendants do not claim to have adjudicated the remaining 17,997 visa applications between August 31, 2022, and the DOS announcement on September 6, 2022, nor do they claim to have adjudicated all remaining employment-based applications at the time plaintiffs filed suit.

Defendants respond that the USCIS policy manual and 8 C.F.R. § 245.1(g)(1) are inapplicable here because they prevent USCIS from *rejecting* applications. Plaintiffs' applications have not been rejected and remain pending. With regard to plaintiffs' argument that their applications could have been adjudicated as long as green cards were available within the 140,000 worldwide limit, defendants argue that the statutes cited by plaintiffs govern whether certain unused visa numbers can be rolled over from one preference category to another but do not grant authority for USCIS to determine how visas are allocated. That authority is given solely to DOS, whom plaintiffs have not named as a defendant. *See* 22 C.F.R. § 42.51(b) ("the Department shall allocate immigrant visa numbers for use in connection with the issuance of immigrant visas and adjustments . . . ."); 8 C.F.R. § 245.2(a)(5)(ii) ("An application for adjustment of status, as a preference alien, shall not be approved until an immigrant visa number has been allocated by the Department of State."). Because defendants have no authority to reallocate visa numbers, plaintiffs' claim are not redressable.[4]

I agree with defendants that with respect to adjudication of plaintiffs' I-485 applications in FY22, plaintiffs lack standing based on redressability. First, plaintiffs did

___

[4] In any event, defendants clarify that the insinuation that not all EB-2 visas were used is off-base. USCIS reported that as of August 31, 2022, 263,510 of the 281,507 available visas had been used, leaving 17,997 across all employment-based categories. *See* Doc. 1-3. It stated it was "committed to taking every viable policy and procedural action to maximize our use of all available visas by the end of the fiscal year and are well-positioned to use the remaining visas." *Id.* On September 6, 2022, DOS notified USCIS that the cap had been reached for EB-2 visas.

not seek expedited relief and the end of FY22 has passed.  Second, the law does not give defendants the statutory authority to do what plaintiffs request.  Defendants cannot approve plaintiffs' applications without a visa number from DOS and DOS is solely responsible for allocating visa numbers.  *See* 8 C.F.R. § 245.2(a)(5)(ii); 22 C.F.R. § 42.51(b).  Plaintiffs have not provided any legal authority under which their claimed injury could be redressed.  *See Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015) ("The redressability prong is not met when a plaintiff seeks relief against a defendant with no power to enforce a challenged statute." (quoting *Bronson v. Swensen*, 500 F.3d 1099, 1111 (10th Cir. 2007))); *Scott v. DiGuglielmo*, 615 F. Supp.2d 368, 373 (E.D. Pa. 2009) ("[i]f the defendants have no power to redress the alleged injuries even if the court were to grant the requested relief, the plaintiff has no case or controversy against those particular defendants." (citing *Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001))).

With regard to plaintiffs' second request, that USCIS "hold" visas from FY22 to allow adjudication of their applications in FY23, or reserve FY23 visas, defendants argue: (1) plaintiffs lack standing and are attempting to create a redressable injury after the fact and (2) their claim is moot because plaintiffs' priority date is not current.[5] Because no visa number is available from DOS for plaintiffs based on their priority date, USCIS cannot approve plaintiffs' applications.  Defendants argue that the allocation by DOS of a visa to plaintiffs over applicants with a current priority date would violate 8 U.S.C. § 1153(e)(1) (providing that immigrant visas "shall be issued to eligible immigrants in the order in which a petition in behalf of each such immigrant is filed with the Attorney General.").  Finally, defendants argue that plaintiffs have failed to meet

---

[5] See February 2023 Visa Bulletin, available at:
https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2023/visa-bulletin-for-february-2023.html (indicating the cut-off date for EB-2 visas for India is May 1, 2012).

their burden that an exception to the mootness doctrine applies based on an expectation that they will be subject to the same action again.

I agree that these claims are also nonjusticiable. Plaintiffs assert two bases for why they have standing and why their claims are not moot. First, they argue that an allegation of future injury is sufficient if it is "certainly impending" or there is a "substantial risk that the harm will occur." *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Second, they argue that defendants are mandated to adjudicate their then-available green cards. Because their claims are based on unreasonable delay, they argue their claims are not moot, and in any event, fall under the exception stated above – that there is a reasonable expectation they will be subjected to the same action again. Neither of these arguments overcomes the redressability issue discussed above. Plaintiffs' request to "hold" or "reserve" visas for adjudication in FY23 confronts a similar problem as in FY22 – the availability of visas. In FY22, the limit for visas in the EB-2 category was reached before plaintiffs' applications could be adjudicated and USCIS lacked authority to reallocate visas from other categories. In FY23, plaintiffs' priority date is not current, meaning – again – that no visas are available to them at this time.

Plaintiffs have cited no legal authority that would allow a federal court to order visas to be held for them when their priority date is not yet current, particularly when the agency responsible for allocating visas is not a party to the suit and is bound by statute regarding the order in which visas may be issued.[6] *See Museboyina v. Jaddou et al.*, No. 4:22CV3169, 2023 WL 1438666, at *8 (D. Neb. Feb. 1, 2023) (concluding plaintiffs could not demonstrate injury in fact, causation or redressability and claims were also

_____

[6] The only case they cite in support of this claim is *Babaria v. Blinken*, No. 22-CV05521-SI, 2022 WL 10719061, at *5 (N.D. Cal. Oct. 18, 2022), in which the court stated "defendants' argument that plaintiffs cannot challenge retrogression because visa numbers are not available in the Fiscal Year 2023 due to retrogression is circular. If the Court were to find that the policy of visa retrogression were unlawful, visa retrogression would not be a bar to relief. Therefore, the case is not moot." As noted by defendants, plaintiffs have not sued DOS and do not challenge DOS' use of retrogression. Thus, *Babaria* is inapplicable.

moot because the alleged injury was not caused by USCIS or DOS, but by Congress). USCIS cannot approve plaintiffs' applications without a visa number from DOS and no visa number is available from DOS based on plaintiffs' priority date. As such, plaintiffs have failed to prove that their alleged injury is redressable.

In short, with regard to FY22 visas, plaintiffs either lack standing based on redressability or their claim is moot. For similar reasons, they lack standing to pursue their claims to either "hold" visas from FY22 or "reserve" visas in FY23 for adjudication in FY23 because they have failed to prove their alleged injuries are redressable. As such, the court lacks subject matter jurisdiction and plaintiffs' claims must be dismissed pursuant to Rule 12(b)(1).

## V. CONCLUSION

For the reasons stated herein, defendants' motion (Doc. 20) to dismiss is **granted** and this action is hereby **dismissed**. The Clerk of Court shall **close this case**.

**IT IS SO ORDERED.**

**DATED** this 24th day of February, 2023.

_____
Leonard T. Strand, Chief Judge